| | |
|---|---|
| **Federal Defenders** | Eastern District |
| OF NEW YORK, INC. | One Pierrepont Plaza, 16th Floor<br>Brooklyn, NY 11201<br>Tel: (718) 330-1200 Fax: (718) 855-0760 |

| | |
|---|---|
| Tamara L. Giwa<br>*Executive Director* | Michelle A. Gelernt<br>*Attorney-in-Charge* |

September 7, 2025

**By ECF**

The Honorable Eric N. Vitaliano
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

**United States v. Hashimi et al., 22 CR 553 (ENV)**
(Abdullah At Taqi's Opposition to Government Motions in Limine)

Dear Judge Vitaliano:

      The government has made eight motions in limine. *See* Memorandum of Law in Support of the Government's Motions in Limine [ECF Doc. No. 117] ("Govt. Mem."). Mr. Abdullah At Taqi opposes six of those motions.[1] For the reasons stated below, those six motions in limine should be denied.

## DISCUSSION

**I.    RATHER THAN GIVING THE GOVERNMENT THE CARTE BLANCHE PERMISSION IT SEEKS, THE COURT SHOULD REQUIRE THE GOVERNMENT TO ESTABLISH THE ADMISSIBILITY OR INADMISSIBILITY OF EACH INDIVIDUAL DEFENDANT STATEMENT IT SEEKS TO ADMIT OR PRECLUDE (Answering Govt. Argument, Point I)**

      By its motion, the government effectively asks the Court to grant it advance blanket permission to introduce the defendants' statements as party-opponent admissions when offered by the government, and to preclude any such statements when offered by defendants. *See* Govt. Mem. at 16-19. The Court should deny the government the carte blanche permission it seeks.

---

[1] Mr. At Taqi does not oppose in limine motions Three and Eight. As to Motion Three (seeking to preclude evidence or argument about classified information), the government has disclosed no classified evidence to Mr. At Taqi, nor informed him that it possesses any classified information relevant to him. Thus, Mr. At Taqi does not intend to reference classified evidence at trial, and Motion Three is irrelevant as to him. Regarding Motion Eight, given settled law, Mr. At Taqi does not oppose precluding evidence and argument about possible punishments.

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 2 of 10 PageID #: 733

| | |
|---|---|
| Hon. Eric N. Vitaliano | Page 2 of 10 |
| Judge, United States District Court | United States v. Abdullah At Taqi |
| for the Eastern District of New York | September 7, 2025 |

The government has not yet identified the specific portions or portions of any post-arrest statements made by Mr. At Taqi or any of the other defendants that the government intends to use at trial. Until the government identifies the specific statements it intends to use, neither the defendants nor the Court can properly determine the admissibility of any of the proffered statements.

In addition to hearsay concerns, other reasons potentially exist to exclude those statements, including those reasons set forth in FRE 403, 608, or 611. Equally, it appears the government may proffer selected portions of statements, while seeking to preclude other portions of the same statement or related statements, to limit the jury's consideration to just those snippets the government prefers. Any such stratagem would be inappropriate. In *United States v. Williams*, 930 F.3d 44 (2d Cir. 2019), for example, the Second Circuit squarely rejected as "incorrect" attempts by the government to cherry-pick portions of a statement, while precluding the rest:

> With respect to the government's suggestion that evidence proffered under the rule of completeness may be excluded whenever not independently admissible due to the hearsay rule, this is simply not correct. ... [W]hen the omitted portion of a statement is properly introduced to correct a misleading impression or place in context that portion already admitted, it is for this very reason admissible for a valid, non hearsay purpose: to explain and ensure the fair understanding of the evidence that has already been introduced. As we have said before, "even though a statement may be hearsay," it nevertheless "must be placed in evidence if necessary to explain the admitted portion [of this statement], to place the admitted portion in context, to avoid misleading the jury, or to ensure the fair and impartial understanding of the admitted portion." Indeed, the doctrine "can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously."

930 F.3d at 60; *see also* Fed. R. Ev. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time").

Only when the government identifies a specific statement it intends to publish to the jury at trial will defense counsel be able to object on specific grounds, and the Court deny or sustain that objection and decide whether to admit the statement into evidence. Accordingly, the Court should deny the government the improper shortcut it seeks. Instead, the Court should order the government immediately to identify any post-arrest statements they intend to use at trial.

**II.    IN THE ABSENCE OF INDEPENDENT CORROBORATING EVIDENCE OF MR. AT TAQI'S PARTICIPATION IN THE CONSPIRACY, THE GOVERNMENT SHOULD NOT BE ALLOWED TO INTRODUCE ALLEGED CO-CONSPIRATOR STATEMENTS UNDER FEDERAL RULE OF EVIDENCE 801(D)(2)(E). AT THE LEAST, THE COURT SHOULD REQUIRE THE GOVERNMENT TO SUBMIT AN OFFER OF PROOF OR INFORMATIVE OUTLINE OF ITS CORROBORATING EVIDENCE BEFORE TRIAL (Answering Govt. Argument, Point II)**

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 3 of 10 PageID #: 734

Hon. Eric N. VitalianoPage 3 of 10
Judge, United States District CourtUnited States v. Abdullah At Taqi
 for the Eastern District of New YorkSeptember 7, 2025

The government has moved for the admission of statements made by co-defendant Khalilullah Yousuf and Facilitator-1 on an encrypted messaging app. Govt. Mem. at 19-20. The government argues that those statements are not hearsay and admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E). *Id.* at 20.[2]

As the Court is aware, a statement is admissible as a co-conspirator statement only if the Court finds two factors by a preponderance of the evidence: "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999), *citing, inter alia, Bourjaily v. United States*, 483 U.S. 171, 175 (1987). -

"[W]hile the hearsay statement itself may be considered in establishing the existence of the conspiracy," *Gigante*, 166 F.3d at 82; *see Bourjaily*, 483 U.S. at 177-78, those "statements are presumptively unreliable," *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996), *citing*, *Bourjaily*, 483 U.S. at 179. Accordingly, the Second Circuit requires that "there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *Gigante*, 166 F.3d at 82 (emphasis added), *quoting, Tellier*, 83 F.3d at 580 (in turn citing, *inter alia, United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir. 1988)).

Here, there does not appear to be any independent corroborating evidence that connects Mr. At Taqi to the charged conspiracy. As such, any alleged co-conspirator statements will be inadmissible against him. *See Tellier*, F.3d at 580, *citing, inter alia, United States v. Clark*, 18 F.3d 1337, 1341-42 (6th Cir. 1994) ("Since *Bourjaily*, all circuits addressing the issue have explicitly held absent some independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible.").

That being the case, before the Government is permitted to introduce such statements here "subject to connection," as is often the practice in this District, the defense respectfully requests that this Court direct the Government to first provide a pretrial offer of proof or informative outline detailing its "independent corroborating evidence." Absent such disclosure, it is entirely unclear whether the Government will be able to adequately connect those statements to Mr. At Taqi prior to the completion of trial as required by longstanding Second Circuit and Supreme Court precedent.

Moreover, we respectfully submit that requiring the Government to proffer now how it will independently establish Mr. At Taqi's participation in the conspiracy is appropriate to confirm whether the Government is able to meet its evidentiary burdens with respect to these statements and to ensure that the jury's deliberations are not tainted by wrongfully admitted and heard – and later stricken – statements. *See, e.g., United States v. Continental Group, Inc.*, 603 F.2d 444, 457 (3d Cir. 1979) (as a prerequisite to the submission of co-conspirator statements to the jury, the court must first determine whether the Government has "established the existence of the alleged conspiracy and the connection of each defendant with it by a clear preponderance of the evidence independent of the hearsay declarations"); *see also United States v. Ammar*, 714 F.2d 238, 246 n.3

---

[2] The wording of the government's motion leaves some doubt as to whether it intends to offer other communications as coconspirator statements. The Court should order the government to identify any other evidence it intends to introduce under Fed. R. Evid. 801(d)(2)(E).

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 4 of 10 PageID #: 735

Hon. Eric N. Vitaliano  
Judge, United States District Court  
for the Eastern District of New York

Page 4 of 10  
United States v. Abdullah At Taqi  
September 7, 2025

(3d Cir. 1983) ("preliminary determinations as to the admissibility [of co-conspirator statements] must be made on the basis of independent evidence") (citations omitted).

"[C]ontrol of the order of proof at trial is a matter primarily entrusted to the discretion of the trial court." *Brooks v. Tennessee*, 406 U.S. 605, 618 (1972). Although the Second Circuit does not require a pretrial hearing as is done in some other Circuits, considering the complexity of the communications in this case and the paucity of evidence disclosed thus far connecting Mr. At Taqi to the charged conspiracy – he notably never knowingly communicated with any of the charged codefendants, and the government has produced no communications between him and the facilitator indicative of an illegal conspiracy – we respectfully submit that a pretrial offer of proof or informative outline would serve the ends of efficiency and justice in this case and would be consistent with the Second Circuit's holdings in, *inter alia, Gigante* and *Tellier*, and the Supreme Court's holding in *Bourjaily*.

### III. THE COURT SHOULD NOT ADMIT "ISIS PROPOGANDA" FROM THE DEFENDANTS' DEVICES AND SOCIAL MEDIA INTO EVIDENCE (Answering Govt. Argument, Point IV)

The government improperly seeks to introduce into evidence so-called "ISIS Propaganda Evidence" including "violent ISIS propaganda such as images of individuals executed by ISIS, images of the ISIS flag, images of an ISIS ring, press releases from ISIS media websites, and photographs of ISIS soldiers displaying weapons in front of an ISIS flag." Govt. Mem. at 27. The government's motion should be denied under Federal Rule of Evidence 401, 402, and 403.[3]

The government contends the "ISIS Propaganda Evidence" is relevant to proving Mr. At Taqi's "knowledge of the foreign group's designation as a foreign terrorist organization or its commission of terrorist acts." Govt. Mem. at 28. The government also contends, in a footnote, that the material is admissible as "other act" evidence under Rule 404(b). *Id.* at 27, fn. 4. The government is wrong.

Violent images or pictures of the ISIS flag have no connection to proving that Mr. At Taqi knew the U.S. government had made the political decision to proscribe ISIS as an FTO.[4] As to showing knowledge of the commission of terrorist acts, only proposed evidence found on a device that belongs to Mr. At Taqi would matter and, even then, the government would have to show that Mr. At Taqi watched, listened to, or read any subset of documents found on his devices or social media. The government has done none of that in its motion. *See* Govt. Mem. at 27-29. Finally, the evidence is not admissible under Rule 404(b) as "other bad acts" evidence because no evidence exists that Mr. At Taqi planned to provide himself to ISIS or participate in any terrorist attack. Certainly, neither of those actions are part of the material support allegations pled by the government in this proceeding. For all these reasons, the government has not met its burden of

---

[3] This opposition opposes introduction of the so-called "ISIS Propaganda Evidence" generally, as the government has not yet provided its proposed exhibits to defendants. Mr. At Taqi reserves the right to object to each individual GX before or at trial.

[4] Mr. At Taqi does not expect the fact that ISIS has been designated a terrorist organization or his knowledge of the nature of ISIS to be contentious. During his voluntary post-arrest interrogation, Mr. At Taqi stated, in sum and substance, that everyone knows ISIS to engage in terrorism.

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 5 of 10 PageID #: 736

| | |
|---|---|
| Hon. Eric N. Vitaliano | Page 5 of 10 |
| Judge, United States District Court | United States v. Abdullah At Taqi |
| for the Eastern District of New York | September 7, 2025 |

proving the evidence is relevant and admissible under Rules 401, 402, or 404(b).

In addition, Rule 403 provides that the Court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403. It is well-settled that the Court is "accorded 'wide latitude' in excluding evidence" under Rule 403. *See United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (citing *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995)). The proffered evidence is inadmissible under Rule 403.

Balanced against the unproven relevance of the evidence as to Mr. At Taqi is its prejudicial impact, which far outweighs any arguable relevance. Images of executed individuals and other ISIS atrocities would substantially and unfairly prejudice the jury against Mr. At Taqi and risks his conviction because the jury has determined he is a bad person or a general danger to society, as opposed to convicting him for the offense at issue. *See, e.g., United States v. Pugh*, 162 F. Supp. 3d 97, 117 (E.D.N.Y. 2016) (precluding ISIS "Kill Obama" video on Rule 403 grounds because "a jury is likely to have a viscerally negative reaction to an image of the shooting of an American President"). In this regard, while the government contends that the ISIS Propaganda Evidence is "not more inflammatory than the charged conduct" (Govt. Mot. at 28), that contention is unpersuasive on its face. Mr. At Taqi has been charged with providing "material support," *i.e.*, money, to ISIS. The government alleges Mr. At Taqi sent a sum total of $2,769.35 over 10 months. Gov't Mot. At 8. Transferring money to someone is far less shocking and inflammatory than executing individuals. Recognizing that very basic distinction, Judge Garaufis denied the government the very relief it seeks here. See, *United States v. Asainov*, 19 Cr. 402 (NGG)(January 26, 2023 trial transcript at pages 1440 to 1442.

In any event, unfairly prejudicial evidence is not confined to "sensational" or "disturbing" evidence which elicits an emotional response (although the evidence at issue certainly does that), it applies to any evidence which has "an undue tendency to suggest decision on an improper basis." *U.S. v. Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986). Here, if the jury is given the opportunity to associate Mr. At Taqi with ISIS crimes and butchery, it exposes him to the danger that, irrespective of whether he is guilty of the charged "funding" crime, the jury will decide that it may still find him guilty, because he supports terror attacks on civilians. *See, e.g., United States v. Harris*, 1992 WL 373473 (S.D.N.Y. Dec. 2, 1992) (excluding evidence that firm being prosecuted for illegal oil trading scheme was known for being "a highly leveraged company which engaged in aggressive speculative oil trading"); *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (vacating conviction where evidence of previous cocaine conviction had been introduced; although both drug transactions involved cocaine, prejudicial effect on jury of criminal history outweighed any marginal probative value of prior conviction). This is particularly true here, where it appears that the so-called "ISIS Propaganda Evidence" is voluminous and threatens to mislead the jury and waste its time through the sheer amount of time that likely will be spent on this marginal material.

Finally, if the Court allows any such material to be published to the jury (and it should not, for all the reasons discussed above), it should issue a limiting instruction regarding what inferences the jury may draw from the evidence. *See United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010). In particular, the Court should tell the jury that Mr. At Taqi is not on trial for committing the acts depicted in the materials, for holding certain religious or political views, or for

Case 1:22-cr-00553-ENV    Document 122    Filed 09/07/25    Page 6 of 10 PageID #: 737

Hon. Eric N. Vitaliano  
Judge, United States District Court  
for the Eastern District of New York

Page 6 of 10  
United States v. Abdullah At Taqi  
September 7, 2025

sympathizing with ISIS. And the Court should specifically instruct the jury that Mr. At Taqi has a First Amendment right to view and possess the material. *See United States v. Kaziu*, 559 F. App'x 32, 35 (2d Cir. 2014) (approving similar instructions).

## IV. THE COURT SHOULD NOT ALLOW THE GOVERNMENT TO ADMIT EVIDENCE OF THE ARREST AND PROSECUTION OF OTHERS AGAINST MR. AT TAQI (Answering Govt. Argument, Point V)

The government moved to introduce, through a proposed expert witness, evidence about the arrests of three men. Govt. Mem. at 29. The government alleges that codefendant Hashimi communicated with each of the three and that each was arrested and charged with terrorism offenses. *Id.* at 29-30. The government does not allege that Mr. At Taqi ever communicated with any of the three arrestees or indeed had any knowledge of them at all.

The proffered evidence is clearly irrelevant as to Mr. At Taqi and thus inadmissible against him under Fed. R. Evid. 401 and 403. Should the Court allow the government to introduce this evidence against codefendant Hashimi, the Court should instruct the jury that it may not consider this evidence in any way against Mr. At Taqi. *See, e.g., United States v. Tutino*, 883 F.2d 1125, 1130, fn.3 (2d Cir. 1989) (trial judge instructing jury evidence was received only with respect to certain defendants and could not be considered with respect to other defendants).

## V. THE COURT SHOULD NOT ALLOW THE GOVERNMENT TO ADMIT EVIDENCE OF CERTAIN ADDITIONAL BAD ACTS OF HASHIMI AGAINST MR. AT TAQI (Answering Govt. Argument, Point VI)

The government asks to admit evidence of codefendant Hashimi's transfer of money to men arrested for terrorism related offenses, text messages between codefendant Hashimi and a man convicted of terrorism charges in the United Kingdom, and evidence of a voice call between codefendant Hashimi and a radical cleric. Govt. Mem. at 33.

Again, this proffered evidence is completely irrelevant and inadmissible against Mr. At Taqi. Should it be admitted against codefendant Hashimi, Mr. At Taqi will ask that the Court instruct the jury at the time of admission that it may not consider the evidence in any way against Mr. At Taqi. *Tutino*, 883 F.2d at 1130, fn.3.

## VI. THE COURT SHOULD NOT PERMIT CLOSED AND ANONYMOUS TESTIMONY (Answering Govt. Argument, Point VII)

CHS-1 and CHS-2 are government witnesses who communicated entirely remotely, via chat and email, with some of the defendants. Govt. Mem. at 35-36. The government now contends those two "keyboard witnesses" should be permitted to testify anonymously at trial, in a partially closed courtroom. *See id.* at 35-44. The government is wrong. Doing so will violate the public's Sixth Amendment right to an open and public trial and Mr. At Taqi's Sixth Amendment right to confront the witnesses against him.

The Sixth Amendment states that the "the accused shall enjoy the right to a … public trial." U.S. Const. amend VI. This right applies to a defendant's family, friends, and the public. *See, e.g., Rodriguez v. Miller*, 439 F.3d 68, 73 (2d Cir. 2006); *Guzman v. Scully*, 80 F.3d 772, 776

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 7 of 10 PageID #: 738

| | |
|---|---|
| Hon. Eric N. Vitaliano | Page 7 of 10 |
| Judge, United States District Court | United States v. Abdullah At Taqi |
| for the Eastern District of New York | September 7, 2025 |

(2d Cir. 1996) ("exclusion of courtroom observers, especially a defendant's family members and friends, even from part of a criminal trial, is not a step to be taken lightly.").

In *Waller v. Georgia*, 467 U.S. 39 (1984), the Supreme Court held that public access to a courtroom in a criminal case may only be restricted under extremely narrow circumstances. Specifically, "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the court] must make findings adequate to support the closure." *Id.* at 48. "The first requirement -- an 'overriding interest' in favor of closure -- is slightly relaxed where the moving party seeks only a partial closure of the courtroom, rather than a complete closure. In those situations, the moving party need show only a 'substantial reason' rather than an 'overriding interest.'" *Guzman*, 80 F.3d at 775 (citing *Woods v. Kuhlman*, 977 F.2d 74, 76 (2d Cir. 1992)).

Further, as proving prejudice from improper closure is a practical impossibility, violation of the public's right to access is not subject to harmless error analysis; prejudice is presumed. *Waller,* 467 U.S. at 49-50 (holding that a "defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee") and fn.9 (citing cases, including *People v. Jones*, 47 N.Y.2d 409, 416 (1979) ("'harmless error rule is no way to gauge the great, though intangible, societal loss that flows' from closing courthouse doors")); *see also Sevencan v. Herbert*, 342 F.3d 69, 74 (2d Cir. 2002) (applying *Waller* test to partial courtroom closure). The government fails to meet its heavy burden of showing that courtroom closure is required here.

Let us be clear. The two witnesses at issue conduct their operations *completely online and completely anonymously*. Targets of the witnesses' investigations (i) never meet or see the two witnesses' (ii) are never in physical proximity to them; and (iii) are never told anything true that would allow them to link the online persona to the witnesses. *See, e.g.,* Govt. Mem. at 40 (conceding that the "CHSs do not use their true names, and the CHSs true identities have never been disclosed during their interactions with defendants"). Indeed, the witnesses' online personae are necessarily and unavoidably false and must change with every operation. Each future target and operation will follow the same modus operandi – no real pedigree facts; no visual observations; or physical contact; and no proximity. The two witnesses will perforce never reveal to targets what they look like (*e.g.*, through video chats) or do anything else that would allow any future target to connect the two witnesses to any future operation or otherwise place them at risk if they were to testify in an open courtroom.

The online, virtual nature of the witnesses' work readily and conclusively distinguishes these witnesses from those in the cases cited by the government. In those cases, undercover police officers or agents were not virtual, they were physically present in the real-world during operations and risked being seen and recognized in future operations if they testified in open court. For example, in *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997), cited by the government at Govt. Mem. pp. 37, 38, 40 and 41, the undercover agents at issue were physically engaged in controlled buys of narcotics in a certain area and would continue to be so engaged in the future.[5] Here by

---

[5] Similarly, in each of the "endanger the safety of the witness or create national security concern" cases cited by the government, protective measures were used with undercover agents or

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 8 of 10 PageID #: 739

Hon. Eric N. Vitaliano  
Judge, United States District Court  
for the Eastern District of New York

Page 8 of 10  
United States v. Abdullah At Taqi  
September 7, 2025

contrast, there is no risk of CHS-1 or CHS-2 later being recognized by defendants or a future target during an operation – the specific concern motivating protective measures in all these cases.

Under these "virtual" circumstances, the government's request should be summarily denied. There is no reason even to hold a hearing on the matter (Govt. Mem. at 36) as the government has identified no overriding or substantial reason why the courtroom must be closed for the testimony of CHS-1 or CHS-2.

Not only should the courtroom not be closed when CHS-1 and CHS-2 testify, but they should not be permitted to testify under a pseudonym or have cross-examination limited as to them. *See* Govt. Mem. at 36 (requesting same).

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. amend VI. This includes the right to cross-examine a witness regarding his full name. *See Smith v. Illinois*, 390 U.S. 129, 131-132 (1969). In *Smith*, the principal witness against the defendant testified using a pseudonym. 390 U.S. at 130. In holding that this deprived the defendant of his confrontation right, the Supreme Court reasoned:

> when the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131 (internal quotations omitted). Hence, pseudonyms or witness designations are the exception and not the rule, and the government bears the burden of proving that its interest in maintaining the anonymity of a witness outweighs the defendant's interest in fully confronting the witness on cross-examination. *Rovario v. United States*, 353 U.S. 53, 61-62 (1957). The

---

confidential informants whose job or circumstances had led them to physically interact with defendant(s), and who could reasonably be expected to again physically interact with defendants or other targets, often in the same location, in the future. *See, e.g., United States v. Asainov,* No. 19-CR-402, ECF No. 22 at 26-27 (NGG) (E.D.N.Y. Jan. 13, 2023 (confidential informant who had physically interacted with defendant); *United States v. Kandic*, No. 17-CR-449 (NGG), ECF No. 266 (E.D.N.Y. Feb. 28, 2022) (same); *United States v. Pugh*, No. 15-CR-116 (NGG), ECF No. 99 (E.D.N.Y. Feb. 24, 2016) (testimony of undercover law enforcement agent); *United States v. Hernandez*, 2013 WL 3936185 (S.D.N.Y. July 29, 2013) (DEA special agent engaged in "buy and bust" undercover operations); *Nelson v. Crowley*, 2009 WL 498909 (S.D.N.Y. Feb. 23, 2009) (undercover engaged in "buy and bust" narcotics operations in the Bronx); *Carson v. Fischer*, 421 F.3d 83, 91 (2d Cir. 2005) (closing courtroom for testimony of cooperating witness regarding narcotics trafficking in the Lefrak City apartment complex in Queens where CW, his girlfriend, and his family members had all been threatened several times and told they would be killed if CW testified, and CW's family still lived in Lefrak City); *United States v. Naseer*, 2015 WL 13843166 (E.D.N.Y. Jan. 26, 2015) (undercover officers of UK Security Service); *United States v. El-Mezain*, 664 F.3d 467, 491 (5th Cir. 2011) (protecting identity of two Israeli Security Agency agents because doing otherwise would contradict promises made to the Israeli government thus jeopardizing national security, and would also endanger the witnesses and their families).

Hon. Eric N. Vitaliano
Judge, United States District Court
for the Eastern District of New York

Page 9 of 10
United States v. Abdullah At Taqi
September 7, 2025

government cannot meet that burden here.

The government contends, *ipse dixit*. that protective measures are necessary to ensure "the CHSs' safety and continued ability to work in confidential capacities and protecting the integrity of ongoing national security investigations." Govt. Mem. at 40. Such conjecture, which is contradicted by the absolute anonymity of the CHSs online activity, does not meet the government's heavy burden of overcoming Mr. At Taqi's constitutional rights. *See, e.g., United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (government bears burden of demonstrating the asserted "threat to the witness [is] actual and not a result of conjecture"). Again, the cases cited by the government are inapposite because they involve undercover activity in the physical world, not a purely virtual one. *See* cases cited at fn. 5, *supra*.

Equally unsupported is the government's bald contention that using a pseudonym and limiting cross-examination "will not deprive the defendants of the ability to confront" the witnesses or "deprive the Court or jury of the ability to evaluate their credibility." Govt. Mem. at 44. Almost 200 years of jurisprudence directly holds that "it is the exclusive province of the jury to decide what facts are proved by competent evidence, to judge the credibility of the witnesses, and the weight of their testimony." *Strother v. Lucas*, 37 U.S. 410, 452 (1838) (internal citations omitted). As emphasized in *United States v. Wilkerson*:

> The jury has wide latitude to determine for itself the credibility of a witness. Of all the issues which are in the highest order for a jury one is hard pressed to suggest one more firmly intended and more plainly suited for jury determination than that of credibility. The jury is instructed that such is not only its right, but indeed its responsibility as trier of fact: You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

656 F. Supp. 2d 22, 29 (D.D.C. 2009) (internal citations omitted). Bluntly put, it is not up to the government (or defense counsel) to determine what is or is not material to the jury. Indeed, not even the Court may properly make that determination – it is for the jury "alone" to do so. *Wilkerson*, 656 F. Supp. 2d at 29. None of us (counsel or Court) may interfere with the jury's ability to "weigh the evidence" or assess the "credibility of witnesses." *Strother*, 37 U.S. at 452; *Wilkerson*, 656 F. Supp. 2d at 29. Yet, that is precisely what will happen here, if the Court permits the government to withhold their names in favor of a pseudonym and limit cross-examination as to their background and investigative activity.

Case 1:22-cr-00553-ENV   Document 122   Filed 09/07/25   Page 10 of 10 PageID #: 741

Hon. Eric N. Vitaliano  
Judge, United States District Court  
for the Eastern District of New York

Page 10 of 10  
United States v. Abdullah At Taqi  
September 7, 2025

## CONCLUSION

For each of the foregoing reasons, the Court should (i) deny government in limine motions I, II, IV, V, VI, and VII; and (ii) grant Mr. At Taqi such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/
MICHAEL K. SCHNEIDER
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor,
Brooklyn, N.Y. 11201
(718) 330-1161

/s/
SABRINA P. SHROFF
80 Broad Street, 19th Floor
New York, New York 10004
(646) 763-1490

*Attorneys for Mr. Abdullah At Taqi*

cc: Clerk of the Court (by ECF)
AUSA Nina C. Gupta (by ECF and email)
AUSA Gilbert M. Rein (by ECF and email)
AUSA Ellen H. Sise (by ECF and email)
Mr. Cesar De Castro (by ECF and email)