EHS:NCG/GMR
F. #2020R00785

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                                22-CR-553 (ENV)

MOHAMMAD DAVID HASHIMI and
ABDULLAH AT TAQI,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM IN OPPOSITION TO THE DEFENDANT AT TAQI'S MOTIONS *IN LIMINE*

                                                      JOSEPH NOCELLA, JR.
                                                      United States Attorney
                                                      Eastern District of New York

Nina C. Gupta
Gilbert M. Rein
Ellen H. Sise
Assistant United States Attorneys
      (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I. The Court Should Admit the Defendant's Handwritten Note Found During a Search of His Residence........................................................................................................... 1

II. The Court Should Admit Communications Between CHS-1 and Facilitator-1 as Co-Conspirator Statements ...................................................................................... 3

III. The Government Does Not Currently Intend to Admit Evidence Regarding the Route of Funds After Receipt by Facilitator-1 ................................................................... 6

IV. The Defendant's Motion Regarding the Use of Portions of His Post-Arrest Statements at Trial is Premature............................................................................................... 7

V. The Court Should Admit Evidence that At Taqi Transferred Bitcoin to Hashimi ............ 8

VI. The Court Should Deny the Request to Preclude At Taqi's Statements........................... 10

CONCLUSION................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arlio v. Lively*,
 474 F.3d 46 (2d Cir. 2007)................................................................................................ 6
*Holder v. Humanitarian L. Project*,
 561 U.S. 1 (2010)............................................................................................................ 10
*United States v. Bourjaily*,
 483 U.S. 171 (1987).......................................................................................................... 3
*United States v. Castro*,
 813 F.2d 571 (2d Cir. 1987)............................................................................................. 7
*United States v. Downing*,
 297 F.3d 52 (2d Cir. 2002)............................................................................................2-3
*United States v. Gibbons*,
 602 F.2d 1044 (2d Cir. 1979)........................................................................................... 6
*United States v. Gupta*,
 747 F.3d 111 (2d Cir. 2014)............................................................................................. 4
*United States v. Hassan*,
 742 F.3d 104 (4th Cir. 2014) ......................................................................................... 10
*United States v. Kassar*,
 600 F.3d 108 (2d Cir. 2011)...................................................................................... 10-11
*United States v. Malka*,
 2022 WL 1488568 (S.D.N.Y. May 11, 2022) ................................................................. 5
*United States v. Marin*,
 669 F.2d 73 (2d Cir. 1982)............................................................................................... 7
*United States v. Paulino*,
 445 F.3d 211 (2d Cir. 2006)............................................................................................. 3
*United States v. Slaughter*,
 248 F. App'x 210 (2d Cir. 2007) .................................................................................... 2
*United States v. Taylor*,
 767 F. Supp. 2d 428 (S.D.N.Y. 2010) ............................................................................. 2
*United States v. Thiam*,
 834 F.3d 89 (2d Cir. 2019)............................................................................................... 7
*United States v. Walker*,
 142 F.3d 103 (2d Cir. 1998)............................................................................................. 2
*United States v. Williams*,
 930 F.3d 44 (2d Cir. 2019)............................................................................................... 8
*Wisconsin v. Mitchell*,
 508 U.S. 476 (1993)........................................................................................................ 10

**Statutes**

18 U.S.C. § 2339B(a)(1) ............................................................................................................ 10

**Rules**

Fed. R. Evid. 401 .................................................................................................................... 2, 9
Fed R. Evid. 403 ......................................................................................................................... 9

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendant Abdullah At Taqi's motions *in limine*. *See* ECF No. 119 ("Def. Mot."). For the reasons set forth below, the defendant's motions should be denied.

ARGUMENT

I. The Court Should Admit the Defendant's Handwritten Note Found During a Search of His Residence

The defendant moves to preclude evidence of a handwritten note found during law enforcement's search of his residence. Def. Mot. at 1. The handwritten note was contained within a notebook that was located on a shelf in the basement near Taqi's bedroom, which was also located in the basement. The notebook containing the handwritten note states the defendant's name on the front cover. The front page of the note states at the top, "Things Required to make [Hijrah[1] in Arabic] by age 20-21" and contains a list of items including clothing, shoes, two pairs of glasses, pita bread, a siwak,[2] and a pocketknife, among other items. *See* Exhibit A. Many of the items, including pita bread, a siwak, and a Swiss army knife were found in his bedroom or the basement. The back of the note states, "Things to Do Everyday" and is dated 11/19/15. That page is signed "Abdullah"—the defendant's first name. The defendant now argues that (1) the note is irrelevant; (2) the note does not withstand Federal Rule of Evidence 403; and (3) the note is hearsay. Each of these arguments are meritless and should be rejected. *Id.* at 1-3.

---

[1] Hijrah means migration and is used by ISIS supporters to refer to migration to ISIS territory.

[2] A siwak is a teeth cleaning stick or twig commonly used in parts of the Middle East.

1

First, the note is plainly relevant. At Taqi is charged with conspiring and attempting to provide material support to a foreign terrorist organization, ISIS, which requires the government to prove that the defendant acted knowingly and intentionally. Certainly, the defendant's intent to support ISIS, including a desire to move to ISIS territory, is highly relevant to the charged crimes. Indeed, evidence indicating an intent to move to ISIS territory has a "tendency to make" At Taqi's intent to provide material support to ISIS "more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. And contrary to the defendant's assertions, the timing of the note (in 2015) does not render it irrelevant. Instead, it shows the defendant's support of ISIS spanned years—which explains his intent to provide material support to ISIS beginning in at least 2020. Notably, courts routinely find evidence from outside the charged time period admissible. *See, e.g.*, *United States v. Slaughter*, 248 F. App'x 210, 213 (2d Cir. 2007) (defendant's possession of a gun prior to the charged crime was properly admissible); *United States v. Taylor*, 767 F. Supp. 2d 428, 438 (S.D.N.Y. 2010) (same).

Second, the note withstands Rule 403 because it is highly probative of the defendant's intent and not unduly prejudicial. While the note was dated only a few days after ISIS committed attacks in Paris, the government will not argue that the defendant approved or endorsed the Paris attacks, and the Court can provide a limiting instruction to that effect. Rather, the government will argue that the note shows the defendant's intent to support ISIS due to his desire to move to ISIS territory. "As the Supreme Court has recognized, limiting instructions are often sufficient to cure any risk of prejudice." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). Although the defense argues that a limiting instruction "will not cure the prejudice," Def. Mot. at 2, n.1, the Second Circuit has instructed that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions." *United*

2

*States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002).  And in any event, given the charged crimes in this case, an intent to move to ISIS territory is not unduly prejudicial because it does not "involve conduct more inflammatory than the charged crime."  *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006).  In contrast, the note is highly probative of the defendant's intent to knowingly and intentionally support ISIS.

Finally, the note is admissible as non-hearsay or, or in the alternative, as statements of a party-opponent under Federal Rule of Evidence 801(d)(2)(A).  As an initial matter, the government is not intending to offer the note for its truth.  Indeed, the government does not intend to argue that At Taqi's list in fact includes items required to make hijrah.  Rather, the government would offer the note as evidence simply for the fact that At Taqi made such a list, evincing an intent to move to ISIS territory.  The note is therefore non-hearsay.  And even if the note was offered for its truth, it is plainly admissible as a party-opponent statement.  While the defendant argues that "the government has not proven that the 2015 Note was written by" the defendant, Def. Mot. at 2, the note is signed with the defendant's first name: "Abdullah," and is contained within a notebook that states his name on the front cover.  This proves by a preponderance of the evidence that At Taqi made the statements contained in the note.  *See United States v. Bourjaily*, 483 U.S. 171, 175 (1987) (explaining that preliminary questions of admissibility are decided under a preponderance standard).  The Court should deny the defendant's motion and admit the defendant's handwritten note.

II. The Court Should Admit Communications Between CHS-1 and Facilitator-1 as Co-Conspirator Statements

The defendant moves to preclude communications between CHS-1 and Facilitator-1, arguing that they are irrelevant hearsay.  Def. Mot. at 3.  For the reasons explained

3

in the government's motions *in limine*, ECF No. 117 at 19-23, and below, these communications are quintessential co-conspirator statements and are therefore admissible at trial.

First, the communications between CHS-1 and Facilitator-1 are highly relevant. At Taqi argues that because he was not a participant in messages between CHS-1 and Facilitator-1, they are irrelevant to his intent. Def. Mot. at 3. But At Taqi personally introduced CHS-1 to Facilitator-1 and is responsible for the fact that they were able to communicate. In May 2022, At Taqi informed CHS-1 that he had gotten back in touch with the "brother" through whom he had been sending cryptocurrency and assured CHS-1 that the brother was from "Dawlah," meaning ISIS. The brother to whom At Taqi referred was Facilitator-1. At Taqi then informed CHS-1 that he vouched for CHS-1 to Facilitator-1 and vice versa, and he provided Facilitator-1's username on an encrypted chat platform. Following this conversation, CHS-1 and Facilitator-1 began communicating. The defendant's argument that the communications between CHS-1 and Facilitator-1 constitute "activity and statements in which he did not participate," Def. Mot. at 3, is therefore incorrect; to the contrary, At Taqi's introduction led to these communications. CHS-1 and Facilitator-1 also discussed At Taqi, and Facilitator-1 informed CHS-1 that Facilitator-1 had known the defendant for two years, and that At Taqi regularly sent him money. The communications between CHS-1 and Facilitator-1 are therefore directly relevant to At Taqi.

Second, the communications are clearly co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). To admit such statements, a court must find by a preponderance of the evidence that (i) "there was a conspiracy"; (ii) "its members included the declarant and the party against whom the statement is offered"; and (iii) "the statement was made during the course of and in furtherance of the conspiracy." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). Here, there was a hub-and-spoke conspiracy involving the defendants and Facilitator-1,

and Facilitator-1's statements to CHS-1 were made during and in furtherance of the conspiracy. Indeed, after At Taqi introduced Facilitator-1 and CHS-1, Facilitator-1 sent Facilitator-1's Bitcoin address to CHS-1 (to which At Taqi had previously donated), described his role in and the support he provided to ISIS, how the money he collected supported ISIS, how he used fundraisers that are ostensibly for the poor but in reality for ISIS, and statements describing both Taqi and Hashimi, his relationship with both, and their support to ISIS via himself. *See, e.g.*, Exhibit B to Gov't Motions *in Limine* (filed under seal). The defendant's false exculpatory statements that At Taqi and Facilitator-1 "discussed only legal activity – providing aid to refugees," Def. Mot. at 3, is incorrect. Indeed, in messages between Facilitator-1 and At Taqi, Facilitator-1 sent At Taqi an icon for an ISIS flag. *See* Exhibit B.

The defendant's argument that communications between CHS-1 and Facilitator-1 are inadmissible because he is not a participant to them is equally unpersuasive. Def. Mot. at 3. Notably, nothing in the text of Rule 801(d)(2)(E) or in caselaw interpreting the Rule's scope requires that a statement be communicated to any other member of the conspiracy to qualify as a co-conspirator statement, so long as it was made during and in furtherance of the conspiracy and is admitted against a member of the conspiracy. *See, e.g.*, *United States v. Malka*, 19-CR-497 (NSR), 2022 WL 1488568, at *12 (S.D.N.Y. May 11, 2022) ("A statement need not be made by one co-conspirator to another co-conspirator in order to be in furtherance of a conspiracy."). As the evidence described above and offered at trial will establish, At Taqi put CHS-1 and Facilitator-1 in touch so that CHS-1 could contribute funds to Facilitator-1, and Facilitator-1 confirmed that At Taqi had previously sent Facilitator-1 money, which will be corroborated with financial records at trial. These communications are plainly admissible as co-conspirator statements, and the defendant's arguments to the contrary should be rejected.

5

III. The Government Does Not Currently Intend to Admit Evidence Regarding the Route of Funds After Receipt by Facilitator-1

Defendant At Taqi moves to preclude any evidence at trial regarding the "route of the funds" provided by the defendants to Facilitator-1. Def. Mot. at 4. In support of his request, At Taqi acknowledges that the offenses with which he is charged—conspiracy to provide material support to ISIS and attempt to provide material support to ISIS—do not require the government to prove the funds were used to support ISIS after receipt by Facilitator-1. *Id.*

Although the defendant is correct that the government need not prove the final use of the funds that he and defendant Hashimi provided after they were transferred to Facilitator-1, that is not dispositive as to whether such evidence is admissible. First, as the defendant appears to concede, evidence of the direct transfer of funds from the defendants to Facilitator-1 is relevant and admissible at trial. Second, evidence of further movement of the funds from Facilitator-1 to additional ISIS members is relevant and would further establish that funds were in fact sent to ISIS. *See Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) ("If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant." (citation omitted)). This would be probative evidence of the existence of the conspiracy with which the defendants are charged. After all, "proof concerning the accomplishments of the objects of a conspiracy may be the most persuasive evidence of the existence of the conspiracy itself." *United States v. Gibbons*, 602 F.2d 1044, 1047 (2d Cir. 1979).

Nevertheless, at this time the government does not intend to introduce evidence of the additional movement of funds once the funds were transmitted by the defendants to Facilitator-1. However, the government reserves the right to introduce such evidence in the future

6

should the defendants open the door to its admission. Therefore, at this juncture, the defendant's motion should be denied.

IV.     <u>The Defendant's Motion Regarding the Use of Portions of His Post-Arrest Statements at Trial is Premature</u>

The defendant seeks an order that the government be required to identify "the specific portions" of his post arrest statements which the government intends to admit at trial. Def. Mot. at 4. The government intends to provide exhibits, including certain portions of the defendant's post-arrest statement, two weeks prior to trial. As such, the defendant's motion is premature.

The government previously provided notice of the defendant's post-arrest statements as required by Rule 16 of the Federal Rules of Criminal Procedure. Gov't Letter (Mar. 31, 2023), ECF No. 34. These statements include a video recorded statement and a statement made to law enforcement at the time of the defendant's arrest in which the defendant asked, "Is this for terrorism?".

As the government explained in its opening brief, the defendant's statements are not hearsay when offered by the government but are hearsay when offered by the defendant. *See Gov't Mot. in Limine* ECF No. 117 at 16-17. Further, the rule of completeness only requires admitting portions of an otherwise hearsay statement to place other portions of the statement in context. *See id.*; *see also United States v. Thiam*, 834 F.3d 89, 96 (2d Cir. 2019) (citing *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987). The Rule is not a mechanism to admit a defendant's self-serving statement or statements "that are neither explanatory of nor relevant to the admitted passages." *Thiam*, 834 F.3d at 96 (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)).

The defendant's reliance on *United States v. Williams*, 930 F.3d 44 (2d Cir. 2019), is misplaced. Contrary to the defendant's assertion, *Williams* did not "squarely reject" the government's admission of portions of a defendant's post-arrest statement while excluding other portions. In fact, in *Williams*, the Court permitted just the opposite. The Court explained the proper use of the rule of completeness, reiterating that a party seeking to admit a portion of a statement under the rule must show that the excluded statement was necessary to place the admitted portion in context. *Id.* at 60. Therefore, the Court found that the *Williams* defendant's self-serving denial of guilt was properly excluded.

In addition to an incorrect application of the rule of completeness, the defendant's motion should be denied as premature. The government intends to produce its exhibits two weeks before trial. At that time, the defendant will have the opportunity to raise any evidentiary challenges. The government respectfully requests that the Court order At Taqi to notice the government as to any portions of the defendant's statements the defendant views as necessary for completeness by one week before trial, so that the parties can litigate the issue before the witnesses in question testify.

V. <u>The Court Should Admit Evidence that At Taqi Transferred Bitcoin to Hashimi</u>

At Taqi seeks to preclude evidence that At Taqi contributed cryptocurrency to Hashimi. Def. Mot. At 5. Specifically, on July 13, 2020, At Taqi sent approximately 0.02152844 BTC (at the time, valued at approximately $200) to a Bitcoin wallet address controlled by Hashimi (the "At Taqi-Hashimi Payment"). At Taqi contends that the At Taqi-Hashimi Payment should be precluded for two reasons. First, At Taqi argues that the At Taqi-Hashimi Payment should be precluded because he asserts that the funds were solicited by someone with the username "Maqsad Sadaqah" "for refugees." *Id.* Second, At Taqi argues that its probative value

8

is outweighed by its potential for prejudice.  *Id.*   Both of these arguments are meritless—the At Taqi-Hashimi Payment is plainly relevant to whether At Taqi and Hashimi were part of a conspiracy to provide material support to ISIS, including by sending cryptocurrency, and nothing about this evidence is more prejudicial than probative.  Accordingly, the Court should admit evidence of the At Taqi-Hashimi Payment.

In assessing whether evidence is admissible at trial, courts must consider if the evidence is relevant, meaning that it has a tendency to make a fact more or less probable, and that fact is of consequence to the action.  *See* Fed. R. Evid. 401, 402.   The court may exclude relevant and otherwise admissible evidence only where its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or because it is cumulative.  Fed R. Evid. 403.

The defendant argues that the At Taqi-Hashimi Payment should be precluded because it was preceded by Telegram messages from "Maqsad Sadaqah" and was solicited as a payment "for refugees."  Def. Mot. at 5.  As an initial matter, the government will prove at trial that the wallet in question was controlled by Hashimi.  Should evidence be admitted at trial to support it, the defendant is of course free to argue to the jury that he understood the money was going to "Maqsad Sadaqah" "for refugees," but this argument does not go to the admissibility of the At Taqi-Hashimi Payment.  The At Taqi-Hashimi Payment is clearly relevant to the charges—the defendants are alleged to have conspired to provide material support to ISIS through, among other methods, cryptocurrency payments.  That one defendant paid another in cryptocurrency is plainly relevant.

Second, the defendant argues that the admission of the At Taqi-Hashimi Payment will result in unfair prejudice to the defendant because the government will present it as evidence

9

that "Hashimi and Mr. At Taqi knowingly worked together to fund ISIS," which will mislead the jury. Def. Mot. at 5. Contrary to the defendant's argument—the At Taqi-Hashmi Payment *is* evidence that the defendants worked together, whether At Taqi knew who controlled the wallet or not. For the foregoing reasons, the Court should admit evidence of the At Taqi-Hashimi payment.

VI. The Court Should Deny the Request to Preclude At Taqi's Statements

Without identifying any specific statement, the defendant argues that statements made by At Taqi were "purely political statements that do not provide material support to ISIS" and that the Court must analyze such statement under the strict scrutiny standard. Def. Mot. at 6. The defendant misstates *Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010). *Holder* supports the proposition that the material support statute does not prohibit independent advocacy or expression of any kind. *Holder* does not stand for the proposition that a defendant's statements cannot be used as evidence of material support charges. *See United States v. Hassan*, 742 F.3d 104, 127 (4th Cir. 2014) (distinguishing *Holder* in material support case). It is entirely consistent with the First Amendment to make evidentiary use of a defendant's speech to establish the elements of the crimes or to prove motive or intent. *See Wisconsin v. Mitchell,* 508 U.S. 476, 489 (1993).

To find the defendant guilty of conspiring and attempting to provide material support for ISIS, the government must prove, among other things, that the defendant acted knowingly and intentionally, including knowing that ISIS was a foreign terrorist organization or engaged in terrorism or terrorist activities. *See* 18 U.S.C. § 2339B(a)(1) (government must prove that the defendant has "knowledge that the organization is a designated terrorist organization . . . has engaged or engages in terrorist activity . . . or . . . has engaged or engages in terrorism."); *United States v. Kassar,* 600 F.3d 108, 129 (2d Cir. 2011) (observing that statute requires proof

10

that the defendant knows that "the organization he is aiding is a terrorist organization or engages in acts of terrorism"). As such, the Court should admit the defendant's statements that are evidence of motive or one of the elements of the crimes for which he is charged. The Court should deny the defendant's motion to preclude his statements.

## CONCLUSION

For the foregoing reasons, the defendant At Taqi's motions *in limine* should be denied.

Dated:     Brooklyn, New York
           September 7, 2025

                                   JOSEPH NOCELLA, JR.
                                   United States Attorney
                                   Eastern District of New York

          By:    /s/
                Nina C. Gupta
                Gilbert M. Rein
                Ellen H. Sise
                Assistant U.S. Attorneys
                (718) 254-7000

# EXHIBIT A

Things Required to make هجرة by age 20-21

- Backpack
- 2 Jackets (1 Light, 1 Medium)
- 2 Jeans
- 3 warm Pajamas
- 3 T-Shirts
- 2 Shirts
- $6,000
- Boots
- Sandals
- 2 pairs of Glasses
- Lotion
- Vaseline
- Tynenol
- Water
- Pens
- Paper
- Map
- Quran
- Phone with Internet
- Earphones
- Dates
- Pita Bread
- Charger
- Shimagh
- ID
- Passport
- Pocket Knife (Swiss army knife)
- Watch
- Glasses Cases

- Blanket (Sleeping Bag)
- Pillow
- Know Arabic Perfectly
- Books on Islam
- Deodorant
- Atr
- 3 pairs of Socks
- 5 pairs of underwear
- 3 undershirts
- Siwak
- Tweezers
- Portable mirror
- Scissors
- Shaver
- Become Strong
- Prayer mat
- Compass with Qibla
- Floss
- 1 Thawb
- 3 Sirwal Qamees's

Things to Do Everyday ان شاء الله
Starting يوم الجمعة 11/19/15
- Pray five times propery with خشوع
- Recite Quran
- Memorize Quran
- Learn Arabic العربية
- In the morning do exercise
- 30 push-ups
- 30 sit-ups
- stretch
- possibly run
- Lift weights 30 times
- Drink 2 glasses of milk
- Study ahadith
- Pay تجويد

        Abdullah

     a B c

      b

# EXHIBIT B

