**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

September 15, 2025

**By ECF**

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

<u>United States v. Hashimi et al., 22 CR 553 (ENV)</u>
(Mr. At Taqi's Reply in Further Support of His Six *In Limine* Motions)

Dear Judge Vitaliano:

Abdullah At Taqi previously filed six *in limine* motions in this matter. *See* ECF Doc. No. 119. He now respectfully submits the following reply in further support of those motions.

## DISCUSSION

In its opposition ["Govt. Opp.", ECF Doc. No. 121], the government does not contest the merits of two of Mr. At Taqi's six motions – Motions Three and Four. As to Motion Three, the government states that it does not currently intend to admit evidence regarding the route of funds after receipt by Facilitator-1. *See* Govt. Opp. at 6-7. As to Motion Four, the government agrees to identify the specific statements of Mr. At Taqi's post-arrest statements it intends to use at trial, so that defense counsel may raise objections to their admission and/or identify what portions of those statements should also be included for the sake of completeness. *See* id. at 7-8. Accordingly, this reply concentrates on the four remaining motions the government asks the Court to deny. As to them, the few contentions the government raises in its opposition are meritless. Mr. At Taqi's *in limine* motions should be granted.

**A. The Government Fails to Prove That the Handwritten Note Law Enforcement Purportedly Found When Arresting Mr. At Taqi in 2022 Is Admissible at Trial (Answering Govt. Opp. pages 1-3)**

"Irrelevant evidence is not admissible." Federal Rule of Evidence ("FRE") 402. And "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." FRE 104. These two basic evidentiary rules prevent the government from publishing the handwritten notes ("Note") to the jury at trial. *See also* FRE 401(b) (requiring that a fact be "of consequence in determining the action" for it to be relevant).

The Note is only admissible if it is written by Mr. At Taqi. The government provides no

proof that it is – such as an admission from Mr. At Taqi, or a handwriting expert that compared the Note to a sample of Mr. At Taqi's handwriting – just unconvincing speculation. Self-serving speculation by the government, however, is not "proof … sufficient to support a finding that the fact exists" under FRE 104. *See, e.g.*, *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.") (citing *INS v. Phinpathya*, 464 U.S. 183, 188-89 n.6 (1984)); *United States v. Lysaght*, 2018 U.S. Dist. LEXIS 193707, *2 n.1 (S.D.N.Y. November 14, 2018) (same). The Note should not be admitted absent proof that Mr. At Taqi wrote it.

Defense counsel asks that it and the Court be given the original Note to inspect, because there are material issues regarding it.

The government appears to have taken two separate pages of notes and put them together to get to the 11-19-2015 date the government wants to link to the ISIS Paris attack (but with the fig leaf of a limiting instruction that the jury is not to consider the date the government is so desperate to tell the jury about). The 2015 date is only on the second page, which has nothing to do with "hijrah." *See* Note (Exhibit A to the Govt. Opp.). The second page is an anodyne list of positive "things to do every day" – exercise, learn Arabic, read, pray, exercise, and drink more milk. There is no proof that the two pages go together (*e.g.*, a staple, or a continuing paragraph, or a numerical notation like "page 1" and "page 2"), or that they were written at the same time. For all we know, even if consecutive, the first page could have been written a few days *before* the Paris attack as in a sporadic diary, not a few days after. In any event, defense counsel is unaware of any testimony by law enforcement that those pages were found together in the page order the government now wishes to present to the jury. To that end, if one looks at the first page of Exhibit A, one can see liquid stains on the bottom right of the first page that do not appear on the second page of Exhibit A, indicating that the pages were not consecutive.

Similarly, the word "Abdullah," which the government contends is proof of authorship, is only on the second page, not the "hijrah" page. Further, that word appears to have been written in a different ink or pen, and by a different author. The letters "a" and "l" and "h" in the word "Abdullah" are written differently than how those letters are written on the rest of the page. This means that, if the word Abdullah was written by Mr. At Taqi (and who knows why or when that occurred), the rest of the Note was not written by him.

The government's inability to prove anything about the Note extends beyond the face of the Note itself. Thus, the Note was not part of the notebook in which it was found and could have been placed there by anyone. Nor was the Note found in Mr. At Taqi's basement bedroom, but in a common area of the basement "near [At] Taqi's bedroom" Govt. Opp. at 1. Thus, the location where it was found does not show the Note was written by, or belonged to, Mr. At Taqi. Nor is authorship shown by the fact that some of the common, everyday items on the page 1 list commonly found in bedrooms, *viz*, shoes, clothes, food, glasses, a pocketknife, and a "thawb" (the Middle Eastern equivalent of dental floss), were found in Mr. At Taqi's bedroom – any more than the fact that some of the items on the page 1 list (dates, scissors, Vaseline, Tylenol) were not found in Mr. At Taqi's bedroom show the list does not belong to Mr. At Taqi.

On this record, on these facts, the government has failed to meet its burden of proving, by a preponderance of the evidence, that the Note is what the government says it is, or that Mr. At

Taqi wrote it. As a result, the Note should not be published to the jury.[1]

Moreover, the Note continues to fail FRE 403's balancing test, which provides that the Court may exclude evidence where, as here, its marginal probative value "is substantially outweighed by" its improper prejudicial impact and likelihood the jury will be confused or misled. Leaving aside what the author of the Note meant when he wrote the word "hijrah," which is not an ISIS-specific word, Mr. At Taqi is not charged with attempting to move to ISIS territory, but with providing funds to it half-a-decade after the Note was purportedly written. Thus, at best, the Note is of limited relevance. Balanced against that is the substantial prejudice and confusion that will be caused if the Note is admitted.

The government admits that the Note is highly prejudicial but contends that prejudice can be sufficiently ameliorated by a limiting instruction. The government is wrong. In *United States v. Ferguson*, 618 F.2d 934, the Second Circuit cautioned that, while a limiting instruction's "utility is not to be invariably rejected, neither should it be invariably accepted" *Id.* at 943. Rather, the "trial judge, sensitive to the realities of the courtroom context as in all other trial rulings, must simply include a sound estimate of the likely force of limiting instructions in the overall [FRE] 403 determination." *Id.* Here, while the government avers that it "will not argue that the defendant approved or endorsed the Paris attacks," it will perforce contend that the "hijrah" list was written just after the attacks (for which it has no evidence) and that Mr. At Taqi knew about those attacks (for which the government also has no evidence). It is an inevitable step to go from the government's unsupported speculation regarding date and knowledge, to the jury reaching the improper and speculative conclusion that Mr. At Taqi approved of the attacks. No limiting instruction will keep the jury from reaching this improper conclusion.

Finally, the government's contention that the Note is not hearsay, because it will not be offered for its truth, is pure sophistry. While the government "does not intend to argue that that At Taqi's list in fact includes items required to make hijrah," it will be offering the Note for the truth of its contents – *i.e.*, that it "evince[es] an intent to [make hijra]," precisely as stated on the top of page 1 of the Note. Govt. Opp. at 3. The government identifies no applicable hearsay exception in its papers, thus failing to meet its burden of proof on the issue. *Idaho v. Wright*, 497 U.S. 805, 816 (1990) (prosecution has burden of demonstrating applicable hearsay exception); *U.S. v. Katsougrakis*, 715 F.2d 769, 775 (2d Cir. 1983) (same). Equally inapplicable is FRE 801(d)(2)(A), given that the government has not proven Mr. At Taqi wrote the Note.

For all these reasons, the Court should grant Mr. At Taqi's motion and keep the Note from the jury.

**B. The Government Fails to Prove That the Social Media Messaging Between CHS-1**

---

[1] The two cases cited by the government in support of admitting the Note (Govt. Opp. at 2) are inapposite and unpersuasive. In both *United States v. Slaughter,* 248 Fed. App'x 210 (2d Cir. 2007) and *United States v. Taylor*, 767 F. Supp. 2d 428 (S.D.N.Y. 2010), the defendant's possession of a prior gun a few months before the gun offense was admitted as FRE 404(b) "other crimes evidence," to show defendants' access to guns. This case does not involve FRE 404(b) – making a list is not a crime. More importantly, there was no question those defendants had a prior gun, while no evidence has been provided here showing the Note belonged to, or was written by, Mr. At Taqi.

**and Facilitator-1 Is Admissible at Trial (Answering Govt. Opp. pages 3-6)**

For the first time, the government acknowledges that it will not seek to prove that Mr. At Taqi conspired directly with any of his codefendants. Instead, it will attempt to establish "a hub-and-spoke conspiracy involving the defendants and Facilitator-1." Govt. Opp. at 4. This acknowledgement provides yet one more hurdle to the admissibility of messages exchanged between CHS-1 and Facilitator-1. A hurdle the government cannot surmount. The government alleges tFacilitator-1 was the central point in a hub-and-spoke conspiracy and that the charged codefendants were "spokes" of the same conspiracy because of their agreement with the Facilitator-1. *See Kotteakos v. United States,* 328 U.S. 750, 754–55 (1946). To establish a single conspiracy in such a situation, the government must prove that "each defendant ... participated in the conspiracy with the common goal or purpose of the other defendants." *United States v. Taggert,* 2010 WL 532530, *1 (S.D.N.Y. Feb. 11, 2010) (internal quotation marks and citation omitted).

In the absence of a common goal, the "spokes" are acting independently from one another. In this circumstance, while there may in fact be multiple separate conspiracies, there cannot be a single conspiracy. *See United States v. Zabare,* 871 F.2d 282, 287–88 (2d Cir. (1989); *see also Dickson v. Microsoft Corp.,* 309 F.3d 193, 203 (4th Cir.2002) ("A rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." (citing *Kotteakos,* 328 U.S. at 755).

For the reasons stated in Mr. At Taqi's motion *in limine*, the government is unable to meet its burden of establishing that the messages between CHS-1 and Facilitator-1 are admissible under FRE 810(d)(2)(E). ECF Doc. No. 119 at 3-4. Even if the government can establish a conspiracy between Facilitator-1 and the other codefendants, it cannot establish that Mr. At Taqi was part of that conspiracy. Further, because the government's case establishes, at most, a "rimless wheel conspiracy" between Facilitator-1 and the other codefendants, the messaging between Facilitator-1 and CHS-1 were unconnected to *any* conspiracy. *See, e.g., United States v. Goldberg,* 756 F.2d 949, 958 (2d Cir.1985) (Conspiracy requires two participants and "a person acting as an agent of the government cannot be a coconspirator.").

Even were the messaging between Facilitator-1 and CHS-1 non-hearsay under FRE 810(d)(2)(E), it should be precluded pursuant to FRE 403. The government freely admits that Mr. At Taqi never saw the messages exchanged between its cooperator and Facilitator-1. In those messages, the government's cooperator goaded Facilitator-1 into avowing that he or she was sending money to ISIS. For example, by stating that some who contributed money wanted to be sure it was going to pay for weapons. Facilitator-1, who appears to be intent on obtaining money in any way he or she could, replies by telling CHS-1 what he wanted to hear. Thus, the government's agent induced Facilitator-1 to make statements affirming a relationship with ISIS and now wants to use those (likely false) statements against Mr. At Taqi. The unfair prejudice is obvious.

For the foregoing reasons, the Court should grant Mr. At Taqi's motion and preclude the evidence of messaging between Facilitator-1 and CHS-1 from the trial.

C. **The Government Fails to Prove That the Evidence of Bitcoin Payment from Mr. At Taqi's Wallet to Hashimi's Wallet Is Admissible at Trial (Answering Govt. Opp. pages 8-10)**

The government continues to contend it should be permitted to introduce evidence of a Bitcoin ("BTC") transfer from Mr. At Taqi's BTC wallet to Mr. Hashimi's BTC wallet, to prove they "were part of a conspiracy to provide material support to ISIS, including by sending cryptocurrency." Govt. Opp. at 9. The government is wrong.

To prove a conspiracy, the government must prove Mr. At Taqi and Mr. Hashimi conspired with each other and acted in support of that conspiracy. *See, e.g., United States v. Coppola*, 671 F.3d 220, 226 (2d Cir. 2012). Thus, more is needed than "the government [proving] at trial that the wallet in question was controlled by Hashimi." Govt. Opp. at 9. The government also must prove that Mr. At Taqi *knew* both that (i) the wallet in question was controlled by Hashimi, and (ii) Hashimi was collecting monies for ISIS. *See* FRE 104 ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.") The government is unable to meet its burden of proving Mr. At Taqi knew these two facts.

The government concedes Hashimi obfuscated his connection to his social media accounts, registering them with false names and misleading contact information. The social media messages and wallet here were purportedly controlled by a "Maqsad Sadaqah" who was gathering donations for refugees, not ISIS. Therefore, all this BTC transfer demonstrates is that Mr. At Taqi sent $200 to "Maqsad Sadaqah" to help refugees. The BTC transfer cannot establish Mr. At Taqi intended to send funds to Hashimi or to ISIS. If anything, Hashimi soliciting At Tai under false pretenses negates conspiracy. For this reason alone, the Court should grant Mr. At Taqi's motion and preclude introduction of the BTC transfer at trial.

In addition, the BTC transfer should be precluded under FRE 403, The government mistakenly contends the BTC transfer meets FRE 403's balancing test because it "is evidence that the defendants worked together, *whether At Taqi knew who controlled the wallet or not*." Govt. Opp. at 10 (emphasis added). The government's contention – which improperly removes intent and knowledge from the government's burden of proof – will likely confuse the jury or mislead the jury in violation of FRE 403. Indeed, the government's position would make every victim who ever sent BTC to a "poisoned" or scam wallet under false pretenses a prosecutable co-conspirator with the malefactor who controlled the poisoned wallet. The government's own confused argument demonstrates why evidence of the BTC transfer should be suppressed under FRE 403 (providing that the Court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury").

D.  **The Government Fails to Prove Mr. At Taqi's Political Statements Are Admissible at Trial (Answering Govt. Opp. pages 10-11)**

As noted in Mr. At Taqi's *in limine* motion, the government intends to introduce purely political statements made by Mr. At Taqi at trial, contending that these statements show support for ISIS. Mr. At Taqi moved to preclude such statements from evidence. ECF Doc. No. 119 at 6-7. The government now contends these political statements are admissible to show that Mr. At Taqi "acted knowingly and intentionally, including knowing that ISIS was a foreign terrorist organization or engaged in terrorism or terrorist activities." Govt. Opp. at 10.

The statements Mr. At Taqi seeks to preclude generally espouse support for Muslims worldwide and criticize the governments of majority Muslim countries.[2] These political statements do not evince support for ISIS and are thus not relevant to the charges in this case. Also, Mr. At Taqi's knowledge that ISIS was a foreign terrorist organization will not be contested at trial. Indeed, during his post-arrest interrogation, Mr. At Taqi stated that he was aware of violence committed by ISIS and that "everyone is aware of it." Thus, any relevance Mr. At Taqi's political statements have on that issue can only be marginal and is substantially outweighed by the risk of prejudice under FRE 403. The government's attempt to admit these statements also fails to pass heightened scrutiny under *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).

## CONCLUSION

For each of the foregoing reasons, and those set forth in Mr. At Taqi's moving papers, the Court should (i) grant Mr. At Taqi's *in limine* motions; and (ii) grant him with such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/
MICHAEL K. SCHNEIDER
Federal Defenders of NY, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(718) 330-1161

/s/
SABRINA P. SHROFF
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Mr. Abdullah At Taqi*

---

[2] One example of such a statement is quoted by the government in its motion *in limine*: "All we really need is maybe like 100,000 fighters and biidhnillah the Muslims could conquer the world cause most of our enemies are Cowards." ECF Doc. No. 117 at 9. Nothing about this plainly political statement indicates support for ISIS.

cc:    Clerk of the Court (by ECF)
       AUSA Nina C. Gupta (by ECF and email)
       AUSA Gilbert M. Rein (by ECF and email)
       AUSA Ellen H. Sise (by ECF and email)
       Mr. Cesar De Castro (by ECF and email)